J. F. IRWIN FUEL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9030.    Promulgated February 24, 1927.

During the years 1918 and 1919 petitioner was entitled to classification as a personal service corporation.

*Frederick Schwertner, Esq., L. Harold Sothoron, Esq.,* and *J. Clarence Brennan, Esq.,* for the petitioner.
*Arthur H. Fast, Esq.,* for the respondent.

The petitioner, believing that it was entitled to classification as a personal service corporation, filed personal service corporation re-

turns for the calendar years 1918 and 1919, and its four stockholders included in their individual income-tax returns their distributive shares of the net income of the corporation and paid the tax thereon.

The Commissioner denied the petitioner's claim for personal service classification upon the ground that its income could not be ascribed primarily to the activities of the principal stockholders and that capital was a material income-producing factor, and determined deficiencies in income and profits tax of $13,061 for the year 1918 and $1,627.14 for the year 1919. Petitioner claims that the Commissioner's action in refusing to classify it as a personal service corporation is erroneous. Petitioner also alleges that if its claim for classification as a personal service corporation is denied, the Commissioner is barred by the statute of limitations from assessing any tax against it for the reason that it was dissolved in 1920 and that the agreements entered into with the Commissioner and filed by J. F. Irwin, president of the J. F. Irwin Fuel Co., in 1924 and 1925, were void and of no effect.

### FINDINGS OF FACT

Petitioner is a Pennsylvania corporation organized on March 1, 1917, and during the taxable years was engaged in selling coal for others upon commission, with principal office at Latrobe. From 1902 to 1908, J. F. Irwin was engaged as a mining and civil engineer. From 1908 until March, 1917, he was vice president and general manager in charge of production and sales of the Unity-Connellsville Coke Co., Latrobe, Pa. In this work he devoted practically all of his time and efforts to selling coal and became well known to the coal consuming public. In 1917 petitioner entered into contracts with certain corporations and individuals engaged in mining and selling coal to sell coal for them upon a commission of usually 10 cents a ton. Petitioner's activities throughout the years involved consisted of selling coal under the terms of these contracts, all of which were the same, and were as follows:

Whereas, the said party of the first part [the operating company] hereby appoints the party of the second part [petitioner] its sole selling agent for its entire production of coal and coke, on the terms and conditions following:

Now therefore in consideration of a commission fixed at the end of each month by the party of the first part, but in no case to exceed ten per centum (10%) of the gross sales of the party of the second part; the said party of the second part agrees and binds himself as follows:

The said party of the second part agrees that it will not quote or accept prices for coal or coke except those fixed daily by the party of the first part.

The said party of the second part has the right to buy coal and coke from sources outside the operations owned by the party of the first part, but both the commissions allowed the party of the second part and the price paid to the producer as well as the price charged the consumer must be assented to by the party of the first part.

This agreement can be cancelled by either party upon sixty days notice in writing.

It is agreed between the said parties that the party of the second part will not guarantee any account but all uncollectible accounts or losses due to failure to accept shipments are to be charged to the party of the first part.

The party of the second part is to pay all salaries, selling, traveling, office expenses and any other expenses incurred in the conduct of the business, from the commissions received from the party of the first part.

Petitioner neither purchased nor sold coal on its own account. Persons from whom petitioner obtained orders for coal made payment therefor to it, and petitioner, in turn, remitted the amounts collected to the particular operating company less its fixed commission. Petitioner was not required to make remittances to the operating company for coal shipped to persons who had given orders through petitioner until the purchase price of the coal had been paid by the purchaser, and any loss on account of failure of the purchaser to pay was borne by the coal operator who had shipped the coal.

Petitioner's outstanding capital stock during the taxable years 1918 and 1919, and the persons by whom it was held, are as follows:

| Stockholders. | Jan. 1, 1918, to Apr. 30, 1918. | | May 1, 1918, to July 16, 1918. | | July 16, 1918, to July 23, 1918. | | July 23, 1918, to Dec. 31, 1919 | |
|---|---|---|---|---|---|---|---|---|
| | Shares held. | Per-centage of total. | Shares held. | Per-centage of total. | Shares held. | Per-centage of total | Shares held. | Per-centage of total. |
| J. F. Irwin | 205 | 93.2 | 235 | 94 | 480 | 96 | 160 | 32 |
| H. H. Irwin | 5 | 2.3 | 5 | 2 | 10 | 2 | 90 | 18 |
| E. S. Doty | 10 | 4.5 | 10 | 4 | 10 | 2 | 150 | 30 |
| A. I. Hurning | | | | | | | 100 | 20 |
| Total | 220 | 100 | 250 | 100 | 500 | 100 | 500 | 100 |

The stockholders of the corporation paid in to the corporation for stock the sum of $8,500, as follows:

| | |
|---|---|
| April 4, 1917 | $4,000 |
| April 9, 1917 | 250 |
| May 3, 1917 | 1,250 |
| May 6, 1918 | 3,000 |

The money paid in by the stockholders was used in equipping the office and defraying necessary organization and operation expenses in the early days of its activities. J. F. Irwin was responsible for the making of all contracts with operating companies and he was on the road practically his whole time. He made 95 per cent of the total sales in 1918 and 85 per cent of the total sales in 1919. All the stockholders were regularly engaged in the active conduct of the affairs of the corporation and the petitioner's income during the years involved was due entirely to their activities. The employees of the petitioner, in addition to its officers and stockholders,

consisted of three persons who did clerical and stenographic work. The total salaries of these employees amounted to $2,340 per annum. Capital was not material in the production of petitioner's income.

The by-laws of the petitioner defined the duties and powers of the president of the corporation as follows:

Art. III. Section I. The President shall preside at all meetings of the Board; shall be ex-officio, a member of all committees; shall employ and discharge all clerks, employees and agents, subject, however, to the right of the Board to direct by the majority vote the employment or dismissal of any agent or employee. He shall sign all checks, all certificates of stock and conveyances of real estate, and any other instrument in writing requiring a signature, and perform such other duties as may be required of him from time to time by the directors.

On December 10, 1919, the petitioner's directors adopted the following resolution:

Be it Resolved that the J. F. Irwin Fuel Company close up its business on the 30th day of Dec., 1919 and secure a dissolution of the corporation as soon thereafter as the same can be done, and that a stockholders meeting be called for Dec. 15th, 1919, at 10 o'clock A. M. to secure the approval and ratification of this action.

On December 15 the stockholders passed a resolution as follows:

Resolved, that the J. F. Irwin Fuel Company close up its business on the 30th day of Dec. 1919 and secure a dissolution of the corporation as soon thereafter as the same can be done.

On February 25, 1920, petitioner filed a petition in the Court of Common Pleas of Westmoreland County, Pennsylvania, asking that the court enter a decree of dissolution. The court on December 13, 1920, entered a decree dissolving the corporation, which decree was filed with the Secretary of the Commonwealth on December 14, 1920.

On March 5, 1924, the petitioner and the Commissioner agreed in writing to the determination and assessment of any tax due for the year 1918 beyond the period of limitation provided by law as follows:

In pursuance of the provisions of subdivision (d) of Section 250 of the Revenue Act of 1921, J. F. IRWIN FUEL COMPANY, of LATROBE, PA., and the Commissioner of Internal Revenue, hereby consent to a determination, assessment, and collection of the amount of income, excess-profits, or war-profits taxes due under any return made by or on behalf of the said J. F. IRWIN FUEL COMPANY for the year 1918 under the Revenue Act of 1921, or under prior income, excess-profits, or war-profits tax Acts, or under Section 38 of the Act entitled "An Act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes," approved August 5, 1909. This waiver is in effect from the date it is signed by the taxpayer and will remain in effect for a period of one year after the expiration of the statutory period of limitation, or the statutory period of limitation as extended by any waivers already on file with the Bureau, within which assessments of taxes may be made for the year or years mentioned. This waiver signed with the

understanding that the rights of the stockholders to claim refund for over-payment of taxes in 1918, if personal service status is denied, is also extended for one year.

J. F. IRWIN FUEL COMPANY,<br>Taxpayer.

By J. F. IRWIN, Pres.

D. H. BLAIR, Commissioner.

SEAL
CORPORATE

If this waiver is executed on behalf of a corporation, it must be signed by such officer or officers of the corporation as are empowered under the laws of the State in which the corporation is located to sign for the corporation, in addition to which, the seal, if any, of the corporation must be affixed.

On January 20, 1925, petitioner and the Commissioner similarly agreed in writing regarding any tax due for the year 1918 as follows:

INCOME AND PROFITS TAX WAIVER.

(For taxable years ended prior to March 1, 1921.)

In pursuance of the provisions of existing Internal Revenue Laws, J. F. IRWIN FUEL COMPANY, a taxpayer of FIRST NAT. BANK BUILDING, LATROBE, PENNSYLVANIA, and the Commissioner of Internal Revenue hereby waive the time prescribed by law for making any assessment of the amount of income, excess-profits, or war-profits taxes due under any return made by or on behalf of said taxpayer for the year 1918 under existing revenue acts, or under prior revenue acts. This waiver of the time for making any assessment as aforesaid shall remain in effect until December 31, 1925, and shall then expire except that if a notice of a deficiency in tax is sent to said taxpayer by registered mail before said date and (1) no appeal is filed therefrom with the United States Board of Tax Appeals then said date shall be extended sixty days, or (2) if an appeal is filed with said Board then said date shall be extended by the number of days between the date of mailing of said notice of deficiency and the date of final decision by said Board.

J. F. IRWIN FUEL COMPANY,<br>Taxpayer.

By J. F. IRWIN, Pres.

D. H. BLAIR, Commissioner.

SEAL
CORPORATE

If this waiver is executed on behalf of a corporation, it must be signed by such officer or officers of the corporation as are empowered under the laws of the State in which the corporation is located to sign for the corporation, in addition to which, the seal, if any, of the corporation must be affixed.

On January 20, 1925, the petitioner and the Commissioner entered into the following written agreement respecting any tax due for the year 1919 as follows:

INCOME AND PROFITS TAX WAIVER.

(For taxable years ended prior to March 1, 1921.)

In pursuance of the provisions of existing Internal Revenue Laws J. F. IRWIN FUEL COMPANY, a taxpayer of FIRST NATIONAL BANK BUILDING, LATROBE

PENNSYLVANIA, and the Commissioner of Internal Revenue hereby waive the time prescribed by law for making any assessment of the amount of income, excess-profits, or war-profits taxes due under any return made by or on behalf of said taxpayer for the year 1919 under existing revenue acts, or under prior revenue acts. This waiver of the time for making any assessment as aforesaid shall remain in effect until December 31, 1925, and shall then expire except that if a notice of a deficiency in tax is sent to said taxpayer by registered mail before said date and (1) no appeal is filed therefrom with the United States Board of Tax Appeals then said date shall be extended sixty days, or (2) if an appeal is filed with said Board then said date shall be extended by the number of days between the date of mailing of said notice of deficiency and the date of final decision by said Board.

J. F. IRWIN FUEL COMPANY,

Taxpayer.

By J. F. IRWIN, Pres.

D. H. BLAIR, Commissioner.

SEAL

CORPORATE.

If this waiver is executed on behalf of a corporation, it must be signed by such officer or officers of the corporation as are empowered under the laws of the State in which the corporation is located to sign for the corporation, in addition to which, the seal, if any, of the corporation must be affixed.

Each of the above written instruments bore the corporate seal of the J. F. Irwin Fuel Co.

OPINION.

LITTLETON: The evidence submitted sustains petitioner's claim that it was during the calendar years 1918 and 1919 a personal service corporation within the meaning of section 200 of the Revenue Act of 1918. The Commissioner, therefore, erred in determining that petitioner is liable for any income or profits tax for these years.

Petitioner alleged that it was dissolved prior to the execution of the written agreements with the Commissioner that any tax found due for the calendar years 1918 and 1919 might be assessed without regard to the statutory period of limitation; that J. F. Irwin was without power or authority to execute the agreements and that they were, therefore, of no effect; that the running of the statute of limitations was not suspended by these instruments, and that assessment and collection of any tax which might be found due for the calendar years 1918 and 1919 is therefore barred. In view of our conclusion that petitioner was a personal service corporation, it is unnecessary to discuss the question of the statute of limitations.

*Judgment of no deficiency will be entered for the petitioner.*

MURDOCK not participating.